Thank you. Good morning. May it please the Court, Carlos Sanchez on behalf of this morning what I would like to do is to list five reasons why summary judgment in this case should be reversed and then proceed to discuss each one of them. First, even assuming that the exclusion of the material evidence, assuming that it was not erroneous, and even assuming that the adoption by the district court of the discriminatory interpretation of the payment of the loss clause by Universal was not erroneous, Universal is still not entitled to summary judgment because the evidence shows that in December of 2007 it was offering a second alternative to that interpretation which it never offered to Mr. Alemán and that violates good faith. Second, Your Honors, the district court ignored the summary judgment standard when it rejected almost in its entirety Mr. Alemán's denials and qualifications to the counter statement presented by Universal by citing two examples which we explained in our briefs are correctly denied and qualified and more disconcerting when it completely tossed out plaintiff's statement of material facts. Third, Your Honors, the district court committed reversible error when it excluded two declarations which did not contain any contradictions as that term has been used by this court in the Quill and Toney case. Fourth, Your Honor, the district court adopted proposed facts, the majority of which came from Universal that are each either contradicted or refuted by the material evidence in this case. And finally, Your Honor, the district court violated standard in the summary judgment when it failed to interpret the insurance policy in favor of Mr. Alemán. And I want to pause there for one second because I think it's important to point out that this interpretation of the payment of the loss clause, the evidence is undisputed that it was applied only to one repair shop in Puerto Rico during 2007 and 2008. I think we understand these facts. What is bothering me about this is we're talking about one simple, straightforward sentence in an insurance policy that the insurer has the right to pay the loss either by paying the loss or by repairing the car. That's essentially what that one sentence says. The evidence that I've read in this record is uncontradicted that the insurer offered to repair the car and continually asked the insurer either to remove it from the body shop where it was so it could be brought to a different body shop or to sign an authorization form that permitted the insurer to take the car. That didn't happen. I don't understand why all of these pages and pages and pages of facts that both sides have generated and the hundreds, perhaps thousands of trees that have been killed in this effort have been necessary. This is a simple breach of contract case which with all due respect seems to have ballooned out in proportion. How much is the damage to the automobile? How much damage? On the plaintiff's theory, how much damage to his automobile? To the automobile, not much, about less than $10,000. Well less than $10,000, right? This is a diversity case. And I'm struggling to find that the jurisdictional minimum has been met. Wait a minute. Let's talk about jurisdiction. We don't have jurisdiction unless this case involves a good faith dispute in excess of $75,000. Well, for that you have to assume that there was a breach. And you have to look at what the damages cost, what were the damages that were cost to Mr. Aleman. I don't see anything in the record that indicates any way that you can get Mr. Aleman's damages, even if there was a breach up to $75,000. Judge, he suffered a heart attack because of the breach. And we have a plaintiff's report in evidence that shows that he suffered a heart attack, he lost his employment, he lost his ability to earn a living, he went into a depression. And all of that evidence is in the record. But I do want to come back here. And the breach also caused the invasion of Iraq. Right? And the uprising of ISIS. This is a simple breach of contract case. It's not that simple, Your Honor, because of this reason. You always have to look at the context in which this case arises. And I hope that Your Honors will look at the facts of racial discrimination in this case that are material because they show a motive for the breach. What standing does your client have to raise racial discrimination? The alleged victim of the discrimination hasn't made a complaint, at least hasn't made a complaint that's before this court. No, it's in the district court. Your Honor, the point is... That's fine, and it will be adjudicated then. The point is, here's what the facts of racial discrimination are. And they're right here before this court. Universal. Never apply the payment of the loss clause  except Mr. Martinez's shop. So when Mr. Aleman repairs his car in Mr. Martinez's shop in July of 2006 and in September of 2006, this issue of the payment of the loss clause, their interpretation never comes up. What they did was, and the evidence is there, we claim, they concocted this interpretation to carry out, let's just say hostility against Mr. Martinez. But that's what leads to the breach, Your Honor. And that breach, Your Honor, violates... Wait a minute. You never get into all these extraneous issues that you're raising unless there's a breach. And the clause is about as plain vanilla as any clause can be. It's one sentence. They have the right either to pay or to repair. So the question is, did they offer to do that? Yes, they offered to repair. And your client never arranged to deliver the car to the shop where they were going to either repair it or get an appraisal of the loss. No, it's not that simple, Your Honor. It is that simple. Did your client deliver the car to them? My client was not given the second alternative. The second alternative... There's no second alternative in the contract language. They may offer the second alternative because they're trying to be nice to insurers, because they're trying to attract business, et cetera. But the clause requires them to do one of two things. It doesn't require them to do a third thing or a fourth thing. And the fact that they may offer others a third or fourth or second alternative doesn't have anything to do with whether there's a breach here. It has everything to do with whether the insurance policy is being applied in good faith. Because the point is that other insurers, contemporaneous insurers, were asking in December of 2007 to repair a best outcome, like Mr. Aleman did, and they were allowed to repair it by Universal, for whatever reasons. We, I think, show some of the reasons. Yet, Mr. Aleman was not allowed. So the question is, Your Honor, if this is such a crystal clear clause, and it has this exact language that is so crystal clear, why even offer a second alternative? Your Honor, it goes beyond that. If this is such a crystal clear clause, why this crystal clear clause is only being applied to one repair shop in Puerto Rico? One. And that's the reason why there is a breach here. Because it's applied only in a discriminatory fashion to Mr. Martinez. Then Mr. Martinez, if that's true, then Mr. Martinez may have a cause of action. But this is a contract case. You haven't sued and taught here. You've sued in contract. You've claimed a breach of contract. You've got to show some breach of that one single sentence. And I've been through every page in this record, much to my dismay, and I've never seen an indication that there's been noncompliance with that one single sentence. I'm not defending the contract of the insurance company. Insurance companies across the country pick and choose among body shops. Everyone knows that. Their reasons may be good, bad, or indifferent, and the body shops may or may not be able to mount suits for discrimination, for tortious interference with business relationships, etc. But the insurance rights, at least the way you framed this suit, are limited by his contractual rights. And his contractual rights are to have the insurance company either pay for or repeal the car. I have a question that I want to ask. Sure. What kind of damages can you recover for a breach of contract under Puerto Rico law? Under Puerto Rico law, the damages are foreseeable. Unless you can prove, and we're alleging that, that the breach was done with dolo, then the damages expand. And that's one of our causes of action. It's our second cause of action, Your Honor. And I do want to come back to... Well, what are the foreseeable damages that can be foreseen in this case? Sure, Your Honor. Mr. Aleman was a street salesman who needed a car. Because his car was not repaired, because he was not offered a second alternative, which is an alternative to the interpretation. Because he was not offered a second alternative, like other insurers were offered, and Universal did not act in good faith, he lost his car. He lost his ability to earn a living. He, because of that, went into a depression. He actually suffered a heart attack, Your Honor, and was in the hospital for weeks. So we believe clearly, and there's actually even a psychological report in this record, which shows that the $75,000 is easily satisfied here. That's right. Your Honor, if I can come back to that first argument about even assuming that the court were to adopt what I call the discriminatory interpretation of the payment of the loss clause, I have to come back to good faith, Your Honor. If you look at this record, the district court in its one-and-a-half-page opinion does not mention good faith. And the district court does not discuss... The district court doesn't discuss much of anything. It merely says it's made a de novo review of the magistrate judge's extremely lengthy report and recommendation and adopts it. Correct, Your Honor. As a fourth argument, we show that in failing to conduct... What do you mean failing to conduct? The district court said it did a de novo review. Are you asking us to look behind that statement? No, Your Honor. What I'm asking you is to look at my objections at the report and the recommendation, which clearly shows that the facts that the magistrate judge are proposing are contradicted by the material evidence in this record. And again, if you look at, for example, Exhibit 25, which is fully admissible. It's, in fact, been admitted by Universal, and it's a party admissions, and it's in Appendix 1857 to 1858. Our vice president of Universal, and this goes clearly to this issue of whether there's a breach or not, she states that with respect to the case of Mr. Cristal, and she refers to his broker, Mr. Guerrero, they have two options, either to apply the payment of the loss clause or to offer him the second alternative, which the evidence clearly shows Mr. Allermeyer consistently testified was never offered to him. And that's a breach, Your Honor. And that evidence... Excuse me, why is it a breach? Do A and B have a contract? A promises that he will deliver to B a particular thing if B pays for it, in full, in cash. B doesn't pay. Is proof that A has sold the same thing to C, D, and E and accepted less than full payment, accepted installment payments for them, a breach of A's contract with B? It isn't. The fact that the contracting party chooses to strictly enforce the contract in a particular case, but not in every case, that's not a breach. I see my time is up. Thank you. Thank you. Good morning, Your Honors. My name is Israel Fernandez. I'm here on behalf of the Appellees Universal Group Inc., Universal Insurance Company, Eastern American Insurance Company. May I please record? Yes? Yeah. Good morning, Your Honors. To answer one of the jurisdictional questions, basically, and to clarify some of the points presented by counsel, basically here, the record shows that the appellant was already, his car loan account was already in repossession process. He had failed to pay his car loan for almost four months. By the time they had the car accident, the bank was already looking to recollect the car. He was an independent contractor, and he had problems paying the car, at least in the record, since 2006. He had failed to comply with payment promises, et cetera. All of that goes to the damages that the court was asking. The fact of the matter is you never objected to diversity jurisdiction, right? Yes, we did, Your Honor. That was one of the arguments in summary judgment, and basically our argument was that he could not establish any causal nexus between all of those damages that he was looking for and the alleged breach of contract, especially the heart attack that happened like almost a year after when he received a final notice from the insurance commissioner of Puerto Rico interpreting the same clause and saying that Universal indeed had the right to repair and Universal indeed had the right to choose the repair shop. And basically that's when he had the alleged heart attack. And all of his economic problems, they're backdated, and he's trying to, you know, dump them on the alleged breach. But damages isn't really before us on summary judgment, right? The question is, is there a genuine issue of material fact as to whether there has been a breach of this very simple, straightforward one sentence in the policy? He says yes, you say no. You've both written extensive briefs, right, which in terms of their size could justify the litigation in Marbury v. Madison about this single sentence, right? Is there anything you want to add to your brief? Yes, Your Honor, as Your Honor has precisely identified, this is basically a really straightforward clause. It clearly states that it's Universal who has the right to repair and therefore to choose the repair shop. We know that. We can read the clause. I asked if there was anything you wanted to add to your brief. No, Your Honor. Basically, the company did its best efforts to comply, offered to pay, to repair, actually offered to pay the transportation cost, offered a guarantee, the service guarantee, the repair, the labor, even gave him car rental for that time, but he refused. He refused to comply. He refused to even file the police report that they were requesting for. And basically, that's it, Your Honor. Thank you. If you don't have any more questions? Good. Thank you.